# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1843,
## AT CAMBRIDGE.

---

PRESENT :

HON. LEMUEL SHAW, CHIEF JUSTICE.
HON. SAMUEL S. WILDE, ⎫
HON. CHARLES A. DEWEY, ⎬ JUSTICES.
HON. SAMUEL HUBBARD, ⎭

---

CITY OF LOWELL *vs.* PROPRIETORS OF THE LOCKS & CANALS
ON MERRIMACK RIVER.

The Proprietors of the Locks & Canals on Merrimack River are not bound by then
charter (*St.* 1792, *c.* 13, § 5) to make and maintain any bridge over the Merrimack
Canal, which was made for manufacturing purposes, by the Merrimack Manufacturing
Company, before said proprietors purchased the real estate, &c. of sai* company,
under the authority conferred by *St.* 1824, *c.* 47.

ASSUMPSIT to recover the expense incurred by the plaintiffs in
repairing and enlarging a bridge over the Merrimack Canal, in
the city of Lowell.

The case was submitted to the court on the following agreed
statement of facts : The defendants were incorporated by *St.*
1792, *c.* 13, for the purpose of rendering Merrimack River pass-
able with boats, rafts, and masts, from the divisional line of
New Hampshire and Massachusetts to the tide waters of the
said river; and they were authorized to construct and maintain
all such canals, locks, and dams, as should be necessary to carry

into effect the objects of said incorporation. By the fifth section of said statute, it was declared that if there should be occasion, in the prosecution of the said undertaking, to make a canal across any public highways, or if any highways should thereafter be laid out across any such canal, it should be the duty of the defendants to make and maintain in good repair a suffi cient bridge or bridges over such canal.

By *St.* 1821, *c.* 46, the Merrimack Manufacturing Company was incorporated, with the usual powers and privileges of manufacturing corporations, and erected factories on the banks of Merrimack River, and made the Merrimack Canal, which extends from the Pawtucket Canal to Merrimack River. The Pawtucket Canal was made by the defendants, under their act of incorporation, in 1792; and prior to 1821 it had been used solely for the purposes contemplated by that act. In 1821, said canal was widened and greatly enlarged by the defendants, for the purpose of furnishing water for the various mill sites which have been occupied by the manufacturing companies in Lowell. The Merrimack Canal was made for the purpose of drawing water from the Pawtucket Canal, to carry the factories of the Merrimack Manufacturing Company. At the time of making the Merrimack Canal, said manufacturing company owned all the land through which it passed; and there was, at that time, no road where the bridge in question now stands.

By *St.* 1824, *c.* 47, the defendants were authorized to purchase, take and hold all or any part of the real estate, with its appurtenances, water powers, and mill privileges, which were then held by the Merrimack Manufacturing Company, and also other real estate. In 1826, said company conveyed to the defendants the land on which the bridge in question stands, on both sides of the Merrimack Canal, and including the canal, for a considerable extent. The defendants have constructed a dam across Merrimack River, at the head of the Pawtucket Falls, and have, ever since the aforesaid conveyance to them, maintained said Merrimack Canal; and they have also constructed other canals, leading out of said Pawtucket Canal, and out of said Merrimack Canal, for manufacturing purposes·

keeping the same in repair, and erecting waste gates and dams therein. The defendants have also, from time to time, made leases of the water, furnished by said canals, (including the Merrimack Canal,) to different manufacturing companies, charging to and receiving from said Merrimack Manufacturing Company the same annual rent, in proportion to the quantity of water used, as in the case of the other companies. The defendants have also, since the aforesaid conveyance, erected and constantly maintained a saw mill, a large machine shop, and other works, which are supplied with water from said Merrimack Canal ; and the defendants are extensively engaged in manufacturing operations, and have built and furnished numerous factories for other corporations — the purposes, for which said Pawtucket Canal was originally made, having become comparatively unimportant.

In 1828, the defendants laid out Lowell Street, and built the bridge in question, and sold portions of the land on both sides of said street, from time to time. In 1833 or 1834, said street, on the petition of the defendants, was laid out as a highway, and has ever since been used as such ; no damages having been allowed or claimed. Said bridge, until the widening thereof, hereinafter mentioned, was several feet narrower than the said highway.

In 1841, the city council of Lowell voted to widen said bridge, and called upon the defendants to do the same. The public convenience required that the bridge should be widened, and the defendants had due notice to make the widening; and upon their refusal to make it, the plaintiffs made it.

*S. Ames,* for the plaintiffs. The defendants are bound by *St.* 1792, *c.* 13, § 5, to maintain the bridge. They built it, and thereby showed that they construed their charter as the plaintiffs do. They will however rely, for exemption from this obligation, on *St.* 1824, *c.* 47, by which they were authorized to purchase the lands, &c., of the Merrimack Manufacturing Com pany, on which the bridge was afterwards built. But that was not a repealing statute, and its construction should be the same as if it had been added to § 1 of *St.* 1792, *c.* 13. See *Haynes* v. *Jenks,* 2 Pick. 176. *Pearce* v. *Atwood,* 13 Mass. 344. The

defendants do not act in two separate and different capacities, under the two statutes, but only have two distinct grants of power.

It may be said that, as the defendants did not make the canal over which the bridge stands, but bought it of others, they are not bound, by *St.* 1792, to maintain the bridge. But they had "occasion" for the canal, within the meaning of that statute. That was a private statute, and should not be so construed as to injure the public.

*Robinson*, for the defendants. The single object of *St.* 1792, *c.* 13, was to enable the defendants to remove obstructions in Merrimack River, by means of locks and canals ; and they were required to make and repair bridges across any canal for which there should be "occasion in the prosecution of *the said undertaking.*" The canal, over which the bridge in question was made, was dug by the Merrimack Manufacturing Company, on its own land, for purposes wholly different from those of the defendants. And the defendants, by *St.* 1824, *c.* 47, are an entirely different corporation from what they were under *St.* 1792 ; and they succeed to the rights and liabilities of their grantors, and to no other.

DEWEY, J.* The general rule of law devolves upon the city or town, through which a public highway or a town road passes, the duty of maintaining and keeping in proper repair such highway or road, and all bridges necessary to the safety and convenience of the traveller passing over such way. Whenever, therefore, the public exigencies demand the laying out of such road, the expenses incident to the making thereof, and of the necessary bridges connected therewith, devolve upon the city or town in which the same is located, and not upon the individual owning the land over which such road passes, unless there be some special legislation applicable to the particular case. The plaintiffs insist that such exception exists in the present case, and that by force of certain legislative enactments in reference to the duties and liabilities of the defendants, they are

---

* *Hubbard,* J. did not sit in this case.

made chargeable with the making and maintenance of sufficient and suitable bridges upon all highways that may, from time to time, be laid out by the proper authorities across the Merrimack Canal. The course of reasoning and argument, urged by the plaintiffs to sustain this position, is founded upon the provisions of the act incorporating the " Proprietors of the Locks and Canals on Merrimack River." *St.* 1792, *c.* 13. (1 Special Laws, 382.) This act made certain persons a body politic for the purpose of removing the obstructions to the passage of boats, rafts, and masts, upon Merrimack River, from the line of the State of New Hampshire to the tide waters of the said river, and authorized them to construct and maintain canals, &c. In § 5 of this act, it was specially provided thus: " If there shall be occasion, in the prosecution of the said undertaking, to make a canal across any public highways, or if any highways shall hereafter be laid out across any such canal, it shall be the duty of the said proprietors to make and maintain in good repair a sufficient bridge or bridges over such canal." This provision, to the extent to which it applies, is perfectly clear and definite, and imposes on the defendants a liability coextensive with the canals and works to be made and constructed under said incorporating act. If, therefore, the bridge, the expense of erecting and maintaining which is the subject of the present controversy, was upon a highway laid out across the Pawtucket Canal, constructed by the defendants under that act, clearly the expense of making and maintaining it would devolve upon them. This is not denied ; but the defendants insist that their interest in the Merrimack Canal, and their right to maintain the same, are derived through other and different channels, and not incumbered with any such charge or servitude, as that which is created in reference to the Pawtucket Canal.

Upon recurring to the origin of the Merrimack Canal, being a canal which extends from the Pawtucket Canal to Merrimack River, we find that by *St.* 1821, *c.* 46, (5 Special Laws, 454,) the Merrimack Manufacturing Company was incorporated with the usual corporate powers of manufacturing corporations, and, being duly organized, proceeded to erect factories on the banks

1 *

of the Merrimack River, and in aid of its operations, and under this act and organization, made the Merrimack Canal; said company owning the lands through which this canal passed.

In this state of things, the Merrimack Company held its lands, and the canal thereon, subject only to the general laws relating to highways, and without the imposition of any obligation to maintain any bridge over said canal, if any highway should subsequently be laid across it. Such were the rights and such the obligations of the Merrimack Company; and had that company continued to hold the canal and lands through which it passed, I suppose there would have been no attempt to enforce against it a claim like the present. By the subsequent *St.* of 1824, *c.* 47, (6 Special Laws, 228,) the defendants were authorized to purchase and hold all or any part of the real estate, with the appurtenances, the water power, and mill privileges, which were then holden by the Merrimack Manufacturing Company; and by virtue of said act, the defendants did, in the year 1826, by purchase, become the proprietors and owners of that part of the canal where the bridge in question is erected, and the land on both sides thereof; and have, from time to time, used the same for supplying water for manufacturing purposes, and have received annual rents therefor.

Now the inquiry arises, whether the defendants hold their interest in the Merrimack Canal, upon the same terms and conditions as they hold their interest and estate in the Pawtucket Canal. It is quite clear that the Merrimack Company did not hold its canal and water privileges upon the same conditions and restrictions as the Pawtucket Canal was holden by the Proprietors of the Locks and Canals. The defendants derive their title by conveyance from the Merrimack Manufacturing Company, and they insist that they take their estate upon the same terms and conditions as their grantors held it. On the other hand, the plaintiffs insist that all the estate that may vest in the defendants, as well that held under *St.* 1824, *c.* 47, as that held under *St.* 1792, *c.* 13, is subject to the condition imposed by § 5 of *St.* 1792, incorporating the defendants, and authorizing them to construct a canal. This latter position, being in

the nature of a restriction upon the general rules of law regulating rights of property, and creating a servitude, ought to be clearly shown before it can be applied in derogation of the rights of the defendants. Although the Merrimack Company had no such obligation or duty resting on them, yet it was competent for the legislature, when asked to extend the corporate powers of the defendants, so as to enable them to purchase and hold the estate of the Merrimack Company, to annex similar conditions and restrictions as those imposed by § 5 of *St.* 1792, *c.* 13, upon the estate they might hold under that statute. But the legislature omitted so to do, and authorized the defendants to purchase and hold all or any part of the estate holden by the Merrimack Company, and, for aught that appears, upon the same terms and conditions as the Merrimack Company held it. In making the purchase of that company, the defendants succeeded to its interests, and as respects so much real estate and water privilege as they hold under that grant, it is under a new and independent source of title, and to be governed by different rules. The city of Lowell can only require at the defendants' hands the same duties and liabilities that attached to the Merrimack Company, as to all that portion of their property held under *St.* 1824, *c.* 47, leaving in full force all obligations resting upon them by virtue of the *St.* of 1792, *c.* 13, as to all canals or real estate held by them under that statute. The defendants, as it seems to us, hold these different estates under different tenures and conditions, and the provisions of § 5 of *St.* 1792, cannot be properly extended to the estates acquired of the Merrimack Company by purchase under the authority given by *St.* 1824, *c.* 47. As to this latter estate, and the canals constructed thereon, the liabilities of the defendants are no greater, as to the making and maintaining of bridges over the same, than attached to their grantors, who would not have been liable to defray the expense of erecting and maintaining the present bridge ; and the defendants are equally exonerated therefrom.

*Plaintiffs nonsuit*